## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ANIBAL A.,[1]

              Plaintiff,    1:20-cv-07252-NLH

v.                            **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[2]

              Defendant.

---

**APPEARANCES:**

ADRIENNE FREYA JARVIS
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NJ 08034

    *On behalf of Plaintiff*

KRISTINA CAROL EVANS COLE
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

---

[1] See STANDING ORDER 2021-10, available at
https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf,
providing, "[I]n opinions issued in cases filed pursuant to
Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),
in the United States District Court for the District of New
Jersey, any non-government party will be identified and
referenced solely by first name and last initial. This change
will only apply to the opinions issued in Social Security cases,
and will not apply to the PACER docket, which will continue to
display the non-government party's full name. Cases filed on
behalf of a minor will continue to refer to the minor by first
and last initial."

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the Social Security Administration.

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[3] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, February 17, 2015.  For the reasons stated below, this Court will reverse that decision and remand the matter for further proceedings.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On July 28, 2015, Plaintiff, Anibal A., protectively filed an application for DIB,[4] alleging that he became disabled on February 17, 2015.  Plaintiff claims that he can no longer work

---

[3] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

2

as a house builder and as a machine operator because of his
impairments of seizure disorder, obesity, Vitamin D deficiency,
hypertension, hyperlipidemia, partially empty sella turcica,
small posterior fossa arachnoid cyst, major depressive disorder,
generalized anxiety disorder, and panic disorder.[5]

Plaintiff's claim was denied initially and upon
reconsideration.  Plaintiff requested a hearing before an ALJ,
which was held on May 2, 2019.  On May 28, 2019, the ALJ issued
an unfavorable decision.  Plaintiff's Request for Review of
Hearing Decision was denied by the Appeals Council on April 30,
2020, making the ALJ's decision final.  Plaintiff brings this
civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for social security benefits.  Ventura v. Shalala,
55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold
the Commissioner's factual decisions where they are supported by
"substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3);
Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v.

---

[5] On the alleged onset date of February 17, 2015, Plaintiff was
41 years old, which is defined as "a younger individual" (age
18-49).  20 C.F.R. § 404.1563.

3

Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett

4

v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).
Similarly, an ALJ must also consider and weigh all of the non-
medical evidence before him.  Id. (citing Van Horn v. Schweiker,
717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d
700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although
an ALJ, as the factfinder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart, 94
F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,
a district court is not "empowered to weigh the evidence or
substitute its conclusions for those of the fact-finder."
Williams, 970 F.2d at 1182.  However, apart from the substantial
evidence inquiry, a reviewing court is entitled to satisfy
itself that the Commissioner arrived at his decision by

application of the proper legal standards.  <u>Sykes</u>, 228 F.3d at
262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983);
<u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.   Standard for DIB**

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if her physical or mental impairments are of such
severity that she is not only unable to perform her past
relevant work, but cannot, given her age, education, and work
experience, engage in any other type of substantial gainful work
which exists in the national economy, regardless of whether such
work exists in the immediate area in which she lives, or whether
a specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[6] for

_____

[6] The regulations were amended for various provisions effective
March 27, 2017.  <u>See</u> 82 F.R. 5844.  The parties do not indicate

determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix
     1 and has lasted or is expected to last for a
     continuous period of at least twelve months, the
     claimant will be found "disabled."

4.   If the claimant can still perform work she has done in
     the past ("past relevant work") despite the severe
     impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
     ability to perform work ("residual functional
     capacity"), age, education, and past work experience
     to determine whether or not she is capable of
     performing other work which exists in the national
     economy.  If she is incapable, she will be found
     "disabled."  If she is capable, she will be found "not
     disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is
therefore dependent upon a finding that the claimant is
incapable of performing work in the national economy.

    This five-step process involves a shifting burden of proof.
See Wallace v. Secretary of Health & Human Servs., 722 F.2d
1150, 1153 (3d Cir. 1983).  In the first four steps of the

---

that any of the amendments are applicable to the issues
presented by Plaintiff's appeal.

7

analysis, the burden is on the claimant to prove every element
of her claim by a preponderance of the evidence.  See id.  In
the final step, the Commissioner bears the burden of proving
that work is available for the Plaintiff: "Once a claimant has
proved that he is unable to perform his former job, the burden
shifts to the Commissioner to prove that there is some other
kind of substantial gainful employment he is able to perform."
Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.
Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairments of obesity, Vitamin D deficiency, hypertension,
hyperlipidemia, partially empty sella turcica,[7] small posterior
fossa arachnoid cyst,[8] major depressive disorder, generalized
anxiety disorder, and panic disorder were severe.  At step

---

[7] "Empty Sella Syndrome (ESS) is a disorder that involves the
sella turcica, a bony structure at the base of the brain that
surrounds and protects the pituitary gland."
https://www.ninds.nih.gov/Disorders/All-Disorders/Empty-Sella-
Syndrome-Information-Page.

[8] "Arachnoid cysts are cerebrospinal fluid-filled sacs that are
located between the brain or spinal cord and the arachnoid
membrane, one of the three membranes that cover the brain and
spinal cord."  https://www.ninds.nih.gov/Disorders/All-
Disorders/Arachnoid-Cysts-Information-Page.

three, the ALJ determined that Plaintiff's severe impairments or
his severe impairments in combination with his other impairments
did not equal the severity of one of the listed impairments.
The ALJ next determined that Plaintiff had the residual
functional capacity ("RFC") to perform work at the light
exertional level,[9] with certain exertional restrictions.  At
steps four and five, the ALJ determined that Plaintiff was not
able to perform his past relevant work, but Plaintiff's RFC
rendered him capable of performing other jobs in the national
economy, such as an assembler, packer, and sorter.  The ALJ
therefore concluded that Plaintiff was not disabled.

Plaintiff argues that the ALJ erred in his decision because
he improperly found that Plaintiff's seizure disorder was not a
medically determinable impairment, and in turn, the ALJ
improperly failed to consider that impairment in his RFC
determination.[10]  The Court agrees with Plaintiff.

---

[9] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light, medium,
heavy, and very heavy.").

[10] Plaintiff also argues that the ALJ's residual functional
capacity assessment and hypothetical questions upon which he
relied did not reflect the ALJ's finding of a moderate
limitation in concentrating, persisting, and maintaining pace.
Because the Court finds that the ALJ erred in assessing
Plaintiff's seizure disorder, the basis for the ALJ's RFC
determination, and the subsequent findings at steps four and
five, cannot stand and must be reassessed on remand.  Thus, the
Court declines to consider Plaintiff's other basis for appeal.

As part of the five-step sequential step analysis, an ALJ must determine whether a claimant's claimed impairments are "medically determinable," and then the ALJ must determine whether any of those medically determinable impairments are "severe."  Once the ALJ determines that at least one medically determinable impairment is severe at step two, the ALJ continues to the RFC determination.[11]  The RFC assessment[12] takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two.  20 C.F.R. § 416.945(a)(2).

Thus, an ALJ's determination of whether a claimant's claimed impairments are medically determinable is a fundamental building block of the sequential step analysis and the ultimate finding as to whether a claimant is disabled and entitled to DIB.  An error in that determination undermines the entire analysis.

---

[11] As set forth above, this procedure applies if the ALJ does not find at step three that any of a claimant's severe impairments meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (referred to as "the listings") and has lasted or is expected to last for a continuous period of at least twelve months.  If so, the claimant would be found disabled at that point.  Here, the ALJ did not find that any of Plaintiff's impairments met the listings.  Plaintiff does not challenge that finding.

[12] The RFC reflects "what [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a).

With regard to a DIB claimant's claimed impairment and the determination as to whether it is "medically determinable," the SSA regulations instruct:

> If you are not doing substantial gainful activity, we will then determine whether you have a medically determinable physical or mental impairment(s) (see § 404.1520(a)(4)(ii)). Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 C.F.R. § 404.1521 ("Establishing that you have a medically determinable impairment(s)").  Accordingly, to find that a DIB claimant has a medically determinable impairment, that impairment must (1) result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and (2) must be established by objective medical evidence from an acceptable medical source.

Here, the ALJ found Plaintiff's claimed impairment of a seizure disorder was not medically determinable.  The ALJ explained:

> Recently, Dr. Santoro wrote that the claimant "has a known seizure disorder." (Ex. 29F/5). However, the existence of a medically determinable impairment may not be based on an individual's "statement of symptoms," "a diagnosis," or an

11

"opinion." 20 CFR 404.1521. . . . In this case, there is no
EEG evidence showing the existence of a seizure disorder.
(Exs. l lF/15, 19F/27, 19F/12). Most notably, although the
claimant was noted to exhibit seizure-like jerking during a
video EEG in late 2016, an actual seizure was not
confirmed. (Exs. l lF/15, 30F/46). Instead, the claimant's
symptoms were the result of very high blood pressure.
Indeed, in one of the earliest medical records in the case
file (Ex. lF/34), an advanced nurse practitioner implied
that the claimant's seizures were not true seizures - "He
stated that he had a seizure 2 weeks ago, he had vertigo
and his entire right side of face got numb and he does not
remember anything after that, his son witness the
'seizure,' his son stated that he was out for about 3
minutes, he got up and stated he felt ok, he did not seek
immediate care for this 'seizure."'

(R. at 15)

The medical evidence suggests that the claimant's
"seizures" are not true seizures. Although there is a small
arachnoid cyst in his brain, these "seizures" are more
likely the result of severe anxiety and/or occasional
spikes in his blood pressure, given the descriptions given
by the claimant since the application date. (Exs. 3E/2-3,7,
7E/2). In November 2015, for example, the claimant's
description of a typical episode was suggestive of a panic
attack. (Ex. 4E/l). According to his son, the claimant's
postictal symptoms did not last more than 10 to 20 minutes
(Exs. 4E/3, 8E/5), suggesting the claimant's seizures were
not seizures. The claimant claimed one year later that the
quality of his sleep was poor "due to 'think[ing] too
much,"' i.e., anxiety. (Ex. 30F/32). Assuming, moreover,
the claimant's "seizure" episodes are the result of anxiety
and hypertension, it is significant that the claimant
claimed, on the handwritten form submitted in April 2016
(Ex. 9E/6), only to take "seizure meds" regularly, not an
anxiolytic or an antihypertensive agent. *See* 20 CFR
404.1529(c)(3)(iv).

(R. at 23.)

The Court finds numerous errors in this analysis.  First,

the ALJ's statement that "there is no EEG evidence showing the

existence of a seizure disorder" improperly concludes that an

EEG is required to establish a seizure disorder, and it improperly concludes that an EEG which does not demonstrate evidence of a seizure disorder proves that a claimant does not suffer from that impairment.  See 20 C.F.R. Pt. 404, subpt. P, App. 1, § 11.00 (in the context of determining whether a neurological disorder meets a listing of impairments, explaining that "[m]edical evidence should include your medical history, examination findings, relevant laboratory tests, and the results of imaging. Imaging refers to medical imaging techniques, such as x-ray, computerized tomography (CT), magnetic resonance imaging (MRI), and electroencephalography (EEG)"); id. ("We do not require EEG test results; therefore, we will not purchase them. However, if EEG test results are available in your medical records, we will evaluate them in the context of the other evidence in your case record.").[13]

---

[13] See also Sloyer v. Sullivan, 1991 WL 259218, at *2 (E.D. Pa. 1991) ("The Magistrate Judge disposed of plaintiff's seizure disorder claim by noting that since plaintiff's EEG was interpreted as normal by a consulting physician and by an interpreting neurologist she did not meet the abnormal EEG requirement of § 11.03. Many courts, however, noting the suspect value of the EEG in diagnosis, have interpreted § 11.03 as not requiring an abnormal EEG to support a finding of a seizure disorder. Braswell v. Heckler, 733 F.2d 531, 533-34 (8th Cir. 1984) ("a look at the medical literature cautions that the EEG's value in diagnosis should not be overrated.... A Textbook of Epilepsy, 136-137 (Laidlow & Richens ed. 1976)"; Deuter v. Schweiker, 568 F. Supp. 1414, 1421 (N.D. Ill. 1983) (EEG documentation language in section 11.03 could not be read absolutely to require an abnormal EEG to support a finding of epilepsy, or it would be medically invalid). Black, Herman &

Second, the ALJ improperly relied upon the observations of an "advanced nurse practitioner."  At the time of Plaintiff's claim, a nurse practitioner was not an "acceptable medical source" upon which an ALJ may rely.  20 C.F.R. § 404.1502(a)(7).  Third, compounding this error, the ALJ improperly "implied" from this nurse practitioner's notes that Plaintiff's seizures were not "true."  The nurse practitioner did not state that Plaintiff's seizures were not "true" seizures, and an ALJ is not permitted to substitute his own lay judgment for that of any medical source.  See Grzybowski v. Commissioner of Social Security, 2020 WL 2466269, at *7 (D.N.J. 2020) (noting that the ALJ cannot substitute her own lay opinion over the record evidence (citing Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (finding that the ALJ improperly supplanted the opinions of the plaintiff's treating and examining physicians with his personal observation and speculation, and directing that "in choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion" (citations

Shope, Nursing Management of Epilepsy 16 (1982) ("the value of electroencephalography is too often overrated"). I conclude that an abnormal EEG reading is not an absolute requirement to support a determination of § 11.03 seizure disorder.").

and quotations omitted)).

Fourth, later in the decision, the ALJ again concluded without citation to supportive medical evidence that Plaintiff's seizures were not "true."  (R. at 23.)  The ALJ appeared to ignore that the SSA recognizes as medically determinable impairments somatic symptom and related disorders, which manifest in "physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition . . .," such as pseudoseizures.  See 20 C.F.R. Pt. 404, subpt. P, App. 1, § 12.00; 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 11.00(H)(4)(e) ("We do not count psychogenic nonepileptic seizures or pseudoseizures under 11.02. We evaluate these seizures under the mental disorders body system, 12.00."). Thus, even seizures that are not "true" must be considered if record evidence supports such an impairment through clinical diagnostic techniques and objective medical evidence from an acceptable medical source.

Fifth, Plaintiff presented such evidence regarding his seizures, which the ALJ improperly rejected.  In November 2014, a CT of Plaintiff's head showed a partially empty sella turcica. (R. at 570-71.)  On September 16, 2016, treating neurologist Dr. Carran saw Plaintiff who "presents for evaluation of seizures starting 3-4 years ago.  These start with tingling in right

hand, then dizzy and nausea, then loses hearing, dazed and
staring x 30 seconds, then sits or lays down, then LOC with
whole body shaking, [incontinence] x 1.  Last event 4 days ago.
Frequency somewhat reduced [two per] week." (R. at 742.)  Dr.
Carran diagnosed localization-related (focal) (partial)
idiopathic epilepsy and epileptic syndromes with seizures of
localized onset, intractable with status epilepticus, and a
seizure disorder, and said that it was possible that Plaintiff
had non-epileptic seizures (NES). (R. at 745.)  Plaintiff's
frequent seizures needed increased treatment. (R. at 745.)

In November 2017, Dr. Carran reviewed Plaintiff's medical
history, examined Plaintiff, and diagnosed as neurological
disorders, ongoing seizures (with some complaints of focal
seizures); hemisensory loss; and family history of cerebral
aneurysm. (R. at 553-54.)  Dr. Carran found that an MRI showing
post fossa arachnoid cyst did not explain Plaintiff's
hemisensory spells or his seizures. (R. at 553.)  Dr. Carran
prescribed an increased dosage of Topamax. (R. at 554.)

In March 2018, a CT of Plaintiff's head showed no acute
intracranial process.  (R. at 621, 823.)  In January 2019, Dr.
Carran reported:

1. Seizures, some focal c/o; still ongoing with
incontinence; cannot [rule out] frontal lobe focus and
[non-epileptic seizures]

. . . .

16

Unclear if epilepsy may be non-epileptic seizures +/- epileptic seizures.

Also has posterior fossa Arachnoid cyst, fluctuations of which could cause some spells

He has had multiple head injuries and it is likely there is some element of [traumatic brain injury] contributing to all of this[.]

(R. at 868.)

The ALJ failed to properly consider these findings and opinions by Dr. Carran, Plaintiff's treating neurologist. A "cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations and quotations omitted). An ALJ may only reduce his reliance upon a treating physician's opinions if those opinions are inconsistent with other medical evidence, and if he explains his reasoning. Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."). Moreover, an ALJ is required to state what weight he or she ascribes to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c) ("How we weigh medical

17

opinions.  Regardless of its source, we will evaluate every
medical opinion we receive.  Unless we give a treating source's
medical opinion controlling weight under paragraph (c)(2) of
this section, we consider all of the following factors in
deciding the weight we give to any medical opinion.").

Here, the ALJ failed to do ascribe any weight to Dr.
Carran's opinions, and the ALJ failed to explain why he
apparently rejected all of Dr. Carran's findings.  Additionally,
the ALJ ignored the opinion of a state agency consultative
medical source, who opined initially and upon reconsideration on
Plaintiff's DIB claim, that explicitly listed epilepsy as one of
Plaintiff's severe medically determinable impairments.  (R. at
72, 87.)  Instead, the ALJ improperly relied upon an implied
assumption from a non-acceptable medical source and his own lay
opinion to deem Plaintiff's seizures to be, effectively, a
phantom impairment.  This is in direct contravention of the
applicable regulations and law.  It is clear from the record
that Plaintiff's seizures (1) resulted from anatomical,
physiological, or psychological abnormalities that can be shown
by medically acceptable clinical and laboratory diagnostic
techniques, and (2) were established by objective medical
evidence from an acceptable medical source.  20 C.F.R. §
404.1521.

In opposition to Plaintiff's appeal, the Commissioner side-

steps Plaintiff's argument that the ALJ improperly concluded that his seizure disorder was not a medically determinable impairment, and instead argues that even though the ALJ did not consider Plaintiff's seizure order to be "severe," he still considered the effects of his seizures when he assessed Plaintiff's other conditions, which were possible causes of his seizures.  This argument is misplaced and inaccurate.

It is correct that where an ALJ finds that the claimant has at least one severe medically determinable impairment at step two and continues onto the subsequent steps, the omission of another medically determinable impairment at step two is harmless error if the ALJ considers all the medically determinable impairments - severe and not severe - in combination in the RFC determination.[14]  This "harmless error rule" only applies to medically determinable impairments.[15]

---

[14] Torres v. Commissioner of Social Security, 2018 WL 1251630, at *5 (D.N.J. 2018) (citing Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017) (citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005)); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

[15] See, e.g., Ungemach v. Commissioner of Social Security, 2019 WL 3024858, at *6-7 (D.N.J. 2019) (finding that the ALJ did not

The Commissioner's argument is an apparent invocation of the "harmless error rule," and is premised on the conclusion that the ALJ found Plaintiff's seizures to be medically determinable. This rule is inapplicable, however, because the ALJ concluded the opposite - that Plaintiff's seizure disorder was not medically determinable - and he did not consider Plaintiff's seizures at all in the RFC determination.

The Commissioner further argues that Plaintiff's seizures were nonetheless accommodated in the RFC through limitations directed at Plaintiff's severe impairments, even though the ALJ did not state that those accommodations were also for Plaintiff's seizures. That argument is simply the Commissioner's speculation, which cannot rehabilitate an erroneous decision by the ALJ. See Friday v. Commissioner of Social Security, 2021 WL 3879081, at *6 (D.N.J. 2021) ("This

---

improperly fail to consider Plaintiff's migraines in the RFC analysis because they were not a medically determinable impairment, explaining, "Other than Plaintiff's self-reporting that she experiences migraines, which her physicians have recorded in their records, Plaintiff does not cite to one medical record that reveals any office visit specific to her migraines, or documents how her migraine headaches impact her functioning. The ALJ cannot be faulted for not considering Plaintiff's migraine headaches in the RFC assessment because the only record of Plaintiff's migraines is Plaintiff's conclusory statement that she experiences them.") (citing Hatton v. Commissioner of Social Security Admin., 131 F. App'x 877, 879 (3d Cir. 2005) (citing 20 C.F.R. § 404.1527(d)(2)) ("[A] medical source's recitation of subjective complaints is not entitled to any weight.")).

Court cannot incorporate Defendant's analysis to fill in the
blanks of the ALJ's decision.") (citing <u>Burnett v. Commissioner</u>,
220 F.3d 112 (3d Cir. 2000) (explaining that the Commissioner
cannot recharacterize evidence "in an effort to make sense of
the ALJ's decision").

When an ALJ has failed to apply the correct legal standards
and his conclusions are not supported by substantial evidence,
the Court must decide whether to remand the case for rehearing
or to reverse and order an award of benefits.  <u>Melkonyan v.
Sullivan</u>, 501 U.S. 89, 99 (1991) (providing that under Sentence
Four of 42 U.S.C. § 405(g), a court has authority to affirm,
modify, or reverse the Commissioner's decision "with or without
remanding the cause for rehearing").  In this case, the SSA is
in a better position than this Court to restart the sequential
step analysis at step two and properly apply the applicable law
and regulation to that analysis with regard to Plaintiff's
seizure disorder and that impairment's impact on Plaintiff's
RFC.  Consequently, the matter must be remanded for further
proceedings.

**III. Conclusion**

For the reasons expressed above, the decision of the ALJ is
not supported by substantial evidence and must be reversed.  The
matter shall be remanded for further consideration consistent
with this Opinion.  The Court expresses no view as to whether,

21

after a full review and explanation of the record evidence,

Plaintiff should be found disabled or not under the applicable

regulations.

An accompanying Order will be issued.


Date: November 12, 2021              s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

22